## In Re Anonymous No. 58 D.B. 83

Disciplinary Board Docket No. 58 D.B. 83.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KRAWITZ, *Member*, June 4, 1984—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

Respondent was born May 1, 1945. He received a B.A. degree from the University of [   ] in 1967 and a J.D. degree from the law school of the same university in 1970. He was admitted to practice law before the Supreme Court of Pennsylvania in 1972 and his Attorney's Registration is no. [   ]. He was employed by the City of [   ] in the [   ] Office from 1972 to 1978 and thereafter became a private practitioner with a law office at [   ]. He is presently residing at [   ] and is employed leasing cars for [   ] Lincoln-Mercury, [   ]. His present earnings are approximately $25,000 per year.

Respondent was the subject of an informal admonition delivered by Disciplinary Counsel, [   ], on November 8, 1983 for conduct in violation of D.R. 1-

102(A)(4); D.R. 6-101(A)(3) and D.R. 7-101(A)(1) and (2) of the Code of Professional Responsibility, file no. [    ].

The petition for discipline was filed in this matter on October 20, 1983 and charges respondent with professional misconduct in violation of the Code of Professional Responsibility as follows:

(A) D.R. 1-102(A)(3), which prohibits an attorney from engaging in illegal conduct involving moral turpitude;

(B) D.R. 1-102(A)(4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(C) D.R. 1-102(A)(6), which prohibits an attorney from engaging in other conduct which adversely reflects on fitness to practice law;

(D) D.R. 9-102(A)(1), which requires an attorney to preserve the identity of funds and property of a client;

(E) D.R. 9-102(B)(1), which requires an attorney to promptly notify a client of the receipt of funds, securities, or other properties;

(F) D.R. 9-102(B)(3), which requires an attorney to maintain complete records of all funds, securities and other properties of a client coming into the possession of the lawyer and to render appropriate accounts to the client regarding them; and

(G) D.R. 9-102(B)(4), which requires an attorney to promptly pay or deliver to a client as requested by the client funds, securities, or other properties in the lawyer's possession which the client is entitled to receive.

Respondent did not file an answer to the petition for discipline. The matter was referred to hearing committee [    ] on November 14, 1983.

Hearing, after proper notice, was held on December 15, 1983. Respondent appeared without

counsel and chose to represent himself and declined the opportunity to continue the hearing and obtain counsel stating "I am comfortable proceeding . . . I would want very much to go forward." No objections were made by either party to offers of evidence. The hearing committee issued a warning to respondent not to incriminate himself in giving evidence of his use of drugs and respondent specifically waived any objections he might have had. The hearing committee filed its report on March 15, 1984 and forwarded a copy of the same to Disciplinary Counsel and respondent.

The hearing committee unanimously found that respondent had violated the Disciplinary Rules heretofore stated and recommended that respondent be disbarred from the practice of law.

No exceptions were filed and the matter and the recommendation of disbarment was referred to the board. The board reviewed this matter on May 22, 1984, accepted the findings of fact and conclusions of law of the hearing committee and unanimously recommends that respondent be disbarred from the practice of law.

## II. FINDINGS OF FACT

(A) Respondent is an attorney admitted to the practice of law in the Commonwealth of Pennsylvania, having been admitted by the Supreme Court of Pennsylvania on April 24, 1972.

(B) Respondent was retained in December, 1980 to pursue a claim for accidental death of complainants' minor son on the premises of the YMCA of [  ], Pa.

(C) Respondent effected a settlement with the YMCA's insurance carrier, which drafted a release

on September 24, 1981 and issued its draft for $15,000 payable to [A] on September 28, 1981.

(D) The draft was deposited into the escrow account of respondent at the [B] Bank on October 2, 1981.

(E) The signature on the release and the endorsement on the draft purporting to be that of [A], was not hers and she gave no authority to anyone to sign her name.

(F) Respondent signed and forged the name of [A] on both the release and the draft.

(G) Sometime after February, 1982 respondent informed [A] of a settlement, believed by [A] to be $20,000.

(H) Arrangement was made in June, 1982 for [A] to meet with respondent to secure a distribution but this did not occur.

(I) At an unspecified time in 1982 [A] had asked respondent to recommend a lawyer in New Jersey to assist a friend [C].

(J) [A] informed respondent that if it was necessary he could advance funds to the lawyer in behalf of [C].

(K) Respondent paid the New Jersey lawyer $500 on February 16, 1982 and [A] approved.

(1) Respondent on February 16, 1982 distributed cash in the sum of $1,500 to [A].

(M) The balance of the fund ($13,000 less a fee, estimated at $5,000) was used by respondent to take care of personal obligations recognized and admitted by him as a violation of the Code of Professional Responsibility, and further admitted by him that he was prohibited by the Code of Professional Responsibility from using the clients funds and admitted that there is no question that he used [A]'s funds for personal purposes and knew that he was converting her funds in violation of the law.

(N) Some of the funds received by respondent and deposited in the escrow account were used to make distribution in another matter in no way connected with the [A] matter.

(O) On November 8, 1983 at a meeting in the Office of Disciplinary Counsel Respondent informed Disciplinary Counsel that he had been addicted to narcotics for six years.

(P) At the meeting on November 8, 1983, a suggestion that respondent resign from the bar was declined for the reason that respondent insisted that he had made a partial distribution to [A].

(Q) [A] received $15,000 from the Client Security Fund of the Pennsylvania Bar Association.

(R) [Respondent] was born May 1, 1945. He received a B.A. degree from the University of [      ] in 1967 and a J.D. degree from the Law School of the same university in 1970.

(S) He was employed by the City of [      ] in the [      ] office from 1972 to 1978.

(T) He was admitted to the bar of the Supreme Court of Pennsylvania in 1972.

(U) Respondent became a private practitioner after termination in the [      ] office and maintained his office at [        ].

(V) Respondent is presently residing at [      ] and is employed leasing cars for [      ] Lincoln Mercury, [      ].

(W) His present earnings are at the rate of about $25,000 per year.

(X) That respondent, by his own admission, is guilty of fraudulent conversion of his client's funds.

## III. CONCLUSIONS OF LAW

The evidence is conclusive that respondent violated the following Disciplinary Rules:

(A) D.R. 1-102(A)(3) which prohibits an attorney from engaging in illegal conduct involving moral turpitude in that after being retained by the client and without authority he settled a death claim, signed and forged the name of the client on the release and on the draft, deposited the proceeds into his escrow account at the bank and converted a substantial part of the settlement for his own personal purposes.

(B) D.R. 1-102(A)(4) which prohibits an attorney from engaging in a conduct involving dishonesty, fraud, deceit, or misrepresentation, in that he engaged in the conduct recited in no. (A) above and, in addition, failed to report the offer of settlement but without authority to do so undertook to accept it.

(C) D.R. 1-102(A)(6) which prohibits an attorney from engaging in other conduct which adversely reflects on fitness to practice law, in that for some years before entering upon this representation respondent had been addicted to narcotics thereby impairing his ability to function as a lawyer.

(D) D.R. 9-102(A)(1) which requires an attorney to preserve the identity of funds and property of a client, in that although respondent deposited the settlement proceeds in an escrow account and identified them as "[D] Insurance Co. — [A]," he failed to preserve them and used them for purposes other than distribution to the client, and unlawfully converted the funds of his client for his own personal purposes.

(E) D.R. 9-102(B)(1) which requires an attorney to promptly notify a client of the receipt of funds, securities or other property, in that respondent failed to notify the client that he had received a draft from [D] Insurance Company in late September, 1981 until, at the earliest, sometime in February, 1982, or later.

(F) D.R. 9-102(B)(3) which requires an attorney to keep complete records of all funds, securities and other property of a client coming into possession of a lawyer and to render appropriate accounts regarding them, in that respondent failed to keep any detailed records other than the bank account record, and failed to render any account to his client regarding the receipt and disposition of the funds.

(G) D.R. 9-102(B)(4) which requires an attorney to promptly pay or deliver as reqested client funds, securities or other properties in the lawyer's possession which the client is entitled to receive, in that respondent improperly failed to pay the proceeds of the settlement to his client representing funds to which she was entitled, and unlawfully converted client's funds for his own personal purposes.

## IV. DISCUSSION

The Respondent admits that he "expended" his client, [R's] money for his own personal use, including the purchase of drugs to combat what he regarded as depression, and his only excuse for not being disciplined was that he did not use the entire proceeds of the insurance settlement for his own purposes. The fact that he did not use the entire proceeds belonging to his client, but only used a substantial portion of his client's funds for his personal purposes, in no way mitigates the seriousness of his unlawful conduct in forging his client's name on the release and draft, and finally converting to his own use his client's money.

The discussion of the hearing committee is very clear and we quote the same:

"Respondent attorney was retained by the parent of a minor to recover damages for his accidental death. A settlement was reached between the al-

leged tort feasor's insurer and respondent. Respondent did not report the offer of settlement to the client at the time but took it upon himself to accept. Thereafter, without authority to do so from the client, he executed a release and endorsed a draft by signing the client's name.

Respondent deposited the proceeds of the settlement in his escrow account at the bank. He later withdrew various amounts and used them for his personal use. It is clear that even if one-third of the proceeds is deducted as a fee the client did not receive the amount to which she was entitled. Although the hearing committee concluded that in fact $2,000 was turned over to the client, the circumstances of this partial distribution did not follow ordinary patterns and were certainly not done in a straight forward lawyerly manner.

The amount of the settlement was $15,000. Accepting, as we do, that $2,000 of this amount was distributed to the client and assuming, as we do based upon the evidence, that the contingent basis was one-third, the client is still entitled to $8,000 which she has never received.

Moreover the evidence, though unclear, strongly suggests that respondent sometime in 1982 reported that he had succeeded in settling the matter for $20,000 rather than $15,000.

The client insisted that she had never authorized the settlement at the $15,000 figure and was looking for a figure of $20,000 — $25,000. She also insisted that she knew nothing about the settlement until it came to light through the investigation of another lawyer whom she employed to locate respondent because she had been unable to contact him. The hearing committee concluded that this was at best inaccurate. We found that she had been informed that a settlement had been reached, al-

though it is clear that her approval to consumate it in advance was not secured. It is also clear that several months passed, during which respondent converted some of the funds realized to his own use, before he informed the client of a settlement.

Respondent freely admitted that he had effected a settlement, signed his client's name on the release and on the settlement draft. He also conceded that he had not been authorized to sign her name and that he had used some of the funds realized to satisfy his personal obligations.

He informed the hearing committee that he had been invited to consider resignation from the bar but had rejected it. The ground for this decision was stated to be that he had not converted the entire settlement proceeds to his own use but had paid some of them over to the client in the form of cash and a payment to a New Jersey lawyer at her direction. He apparently believed that if he resigned it would be taken as an admission of his conversion of the whole sum and this he was not prepared to do."

Respondent admitted that he was knowledgeable as to his responsibilities under the Code of Professional Responsibility and had on a previous occasion been subjected to an informal admonition delivered by Assistant Disciplinary Counsel on November 8, 1983 for several serious violations of the Code of Professional Responsibility.

The seven violations the hearing committee considered closely involved respondent's relationship with his client. They strike at the very heart of the practice of law because they show respondent to be a person whose actions involve a breach of the public trust. A client must be able to look to his attorney for sound advice, know that the attorney will pursue his/her interest vigorously and effectively; and rest assured that any financial transactions carried out

on the client's behalf will be scrupulously honest, will be fully accounted for at the client's request; and will involve full and immediate payment of funds that are due and owing the client. A lawyer who engages in the kind of conduct involved in this proceeding does not manifest the traits of good moral character required in the furtherance of the administration of justice and expected of persons who are given the privilege and duty of representing clients and the responsibility of behaving as officers of the court. Such a person is hardly one in whom the judicial system can place its trust. Therefore such a person is not fit to represent others in the practice of law. It is the unanimous judgment of the Disciplinary Board that considering the forgery and the unlawful conversion of clients' money anything less than disbarment would be inappropriate.

## V. RECOMMENDATION

The Disciplinary Board unanimously accepts the recommendation of the hearing committee and unanimously recommends that respondent be disbarred from the practice of law in the Commonwealth of Pennsylvania. The Disciplinary Board further recommends that the costs be paid by respondent.

## ORDER

NIX, *C.J.*, And now, this July 13, 1984, the recommendation of the Disciplinary Board dated June 4, 1984, is accepted, and it is ordered that [respondent], be and he is disbarred from the Bar of this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.